## UNITED STATES v. SCHNOLL.

### No. 8479.

Circuit Court of Appeals, Seventh Circuit.
May 31, 1944.

Harry Taylor and Oliver M. Loomis, both of South Bend, Ind., for appellant.

James E. Keating, of South Bend, Ind., Alexander M. Campbell, U. S. Atty., of Fort Wayne, Ind., Tom C. Clark, Asst. Atty. Gen., and Fred C. Cramer, Enforcement Atty., Office of Price Administration, of Indianapolis, Ind., for appellee.

Before SPARKS, MAJOR, and MINTON, Circuit Judges.

SPARKS, Circuit Judge.

Appellant was convicted and sentenced to ninety days' imprisonment under count one of an indictment charging him with violation of Ration Order No. 13, promulgated by the Administrator of the Office of Price Administration pursuant to the Second War Powers Act, 50 U.S.C.A.Appendix, § 631 et seq. A second count charging violation of Ration Order No. 16 was dismissed on motion of the court.

The count under which appellant was convicted charged that he "did unlawfully, willfully, and knowingly sell and transfer to one Eizabeth Allen certain rationed processed foods, to-wit, one case containing twenty-four * * * cans of peaches * * * without * * * (her) giving up any ration points to the said defendant in the way provided for and required by said Ration Order No. 13 as amended, said defendant on said date, being required by said Ration Order No. 13, as amended, to re-ceive and obtain points from the said transferee of said goods so sold and transferred."

The transaction which gave rise to the charge occurred on March 29, 1943. Appellant called on Mrs. Allen at her office and offered to sell her a case of canned peaches and half a case of canned salmon. She testified that according to her recollection he did not ask her for ration points in connection with the purchase. Arrangements were made for him to transfer the goods from his car to hers in a parking place where she had hers. Just as the transfer was completed, an investigator for the OPA who had been watching it identified himself and asked appellant to go with him.

Appellant signed a written statement which was introduced in evidence. In this he stated that he had formerly owned a delicatessen which he closed in November 1941, moving his stock of canned goods to his home, and that the goods sold to Mrs. Allen were from this stock. He took the agent to his home and showed him the stock remaining, which he kept in his basement. This stock included a dozen each of five kinds of canned vegetables, twenty each of pork and beans, and soup, and other canned or bottled foodstuffs in smaller quantities. On trial he testified that he had purchased these in September or October 1942, for the purpose of opening a lunch room.

Four witnesses testified that appellant had approached them, offering to sell them canned goods, one stating that he had told her she need not worry about points, and another that he had purchased a glass jar of sauerkraut from him.

Appellant contends that the evidence is insufficient to establish the fact of the transfer, and that it was obtained by entrapment; that even if the evidence were sufficient, the transfer was not such a one as described in the indictment for the reason that the indictment was not drawn on that theory and portion of Ration Order No. 13, which referred to transfers by unlicensed dealers, but was drawn on the theory of a transfer of processed foods by a licensed dealer without requiring points. He also contends that this transfer, if any, was a casual one, not within the contemplation of the order, and that evidence as to similar acts was inadmissible. Of these contentions, we think the only one which presents a serious question is whether there is a variance between the indictment and the proofs.

Ration Order No. 13, duly promulgated February 11, 1943, Fed.Reg. Vol. 8, page 1840, provides a complete plan for the distribution of processed foods,—canned and frozen fruits and vegetables and dried fruits, between processors, wholesalers, retailers, industrial and institutional users, and individual consumers, all of whom are defined in the order which became effective on March 1, 1943. After that date, according to the provision of Article IX, § 9.2, only retailers, wholesalers and processors were permitted to transfer the processed foods covered by the order, and, under § 9.3, no one was permitted to sell or transfer, buy or acquire any processed foods unless points were given up in the way the order required. Fed.Reg. Vol. 8, p. 1850. Article V, § 5.3(b) (Ibid. p. 1846), defined a retailer as any person dealing in processed foods who has a retail establishment, and § 5.1 provided that "Any place, including a public warehouse, where a 'person' who deals in 'processed foods' keeps stocks of those foods for sale or other transfer is a 'retail establishment' if more than fifty per cent of those stocks are sold or transferred from there directly to 'consumers.' * * *" § 5.3 required that every retailer must register his retail establishments with the Office of Price Administration at any time from April 1, 1943, to April 10, 1943, and § 5.4 provided that no retailer might transfer or acquire processed foods after April 10, unless he had registered in the manner required. Article XIX, § 19.1(b) (Ibid. p. 1857) provided that "No person shall 'transfer,' 'acquire,' use or possess 'processed foods' except in a way permitted by this or any other order of the Office of Price Administration."

· Appellant contends that the evidence is undisputed that he was not a wholesaler, retailer or processor, that he had no store or establishment for dealing in processed foods, and that, therefore, the transfer, if any, was one between consumers, a violation, if any, of Article IX of the order, and not of Article IV or V under which he contends the indictment was drawn. We cannot agree. It is difficult to define appellant's status under the order, but certainly we find nothing in the evidence to prove appellant's assertion that he was a consumer and not a retailer. The record shows that he kept a stock of goods in his basement, small it is true, but then the order does not define the quantities of goods required to permit registration of a person as a retailer. It also shows that he had made offers to sell processed goods to other persons, and it is a fair inference that he was acting as a dealer and not as a consumer. The transaction here involved, as well as those which might have arisen from the offers testified to, were not of the character defined by Article X which provides for certain point-free transfers including exchanges between consumers. The requirement to register had not yet become effective—the period from April 1 to 10 being specified for that purpose. Meantime, no sales were to be made except in accordance with the provisions of the order which permitted no sales except by retailers, wholesalers or processors, and none by those persons without the taking of the required number of points.

 In view of the fact that there was no motion for a bill of particulars, and appellant did not raise the question as to the absence of evidence that he was a dealer until after judgment and sentence, by motion for new trial, we think it is unnecessary for us to consider whether the basement where he had processed foods stored was a place from which he sold more than 50% of his stock directly to consumers, thus rendering him eligible to qualify at the proper time as a retailer, in which capacity it is a fair inference that he was already acting. We think the charge of the indictment, the transfer of processed foods without the taking of ration points, as required on the day the transfer occurred, for any such transfers, was amply sustained by the evidence, and that the eligibility of appellant to act as a retailer and accept points is immaterial on the record presented.

We find no merit in appellant's other contentions.

Judgment affirmed.